**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

RODNEY J. PEARSON & TAJ JEAN-LOUIS,

                                           Plaintiff(s),

                       -against-

THE CITY OF NEW YORK, DETECTIVE ARMENGOL
DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE
MORRIS, AND JOHN DOE # 1-5, police officer(s) of the
New York City Police Department, the identity, number, and
rank of whom is presently unknown,

                                           Defendants.
-----------------------------------------------------------------------X

Civil Action No. 1:16-cv-4661

**COMPLAINT**

**JURY TRIAL
DEMANDED**

        Plaintiff(s) RODNEY J. PEARSON and TAJ JEAN-LOUIS, by and through their attorney,

ABE GEORGE, ESQ., complaining of the defendants herein, upon information and belief, respectfully

shows to this Court, and alleges as follows:

### PRELIMINARY STATEMENT

        1.      This is a civil rights action stemming from a false arrest and malicious prosecution in

which the plaintiffs seek relief for the defendants' violations of their rights secured by 42 U.S.C. §

1983, by the United States Constitution, including its Fourth, Fifth, and Fourteenth Amendments, and

by the laws and Constitution of the State of New York.

        2.      Plaintiff seeks compensatory and punitive damages, an award of costs, interest and

attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

5.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

7.     Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

8.     At all times relevant to this action, Plaintiff RODNEY J. PEARSON is and was a resident of Queens County, New York.

9.     At all times relevant to this action, Plaintiff TAJ JEAN-LOUIS is and was a resident of Queens County, New York.

10.     Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as Defendant CITY OF NEW YORK's agent in the area of

law enforcement and for which it is ultimately responsible.  Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11.     Defendant CITY OF NEW YORK was at all times relevant herein the public employer of Detective ARMENGOL DEIDA, SERGEANT ADAN MUNOZ[1], DETECTIVE MORRIS[2], JOHN DOE # 1-5, police officer(s) of the New York City Police Department, the identity, number, and rank of whom is presently unknown (hereinafter "JOHN DOE # 1-5").

12.     Detective ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, and JOHN DOE # 1-5, police officer(s) of the New York City Police Department, the identity, number, and rank of whom is presently unknown, (hereinafter, all police officers including JOHN DOE # 1-5, collectively referred to as "defendant officers"), are and were, at all times relevant herein, duly appointed and acting officers, servants, employees, and agents of the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), a municipal agency of defendant CITY OF NEW YORK.

13.     At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the CITY OF NEW YORK and/or the State of New York.

14.     The actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant CITY OF NEW YORK.

15.     Plaintiffs are suing the defendant officers in their individual and official Capacities.

---

[1] Upon information and belief, Sergeant Munoz's tax number is 935372.
[2] Upon information and belief, Detective Morris's tax number is 940637.

## NOTICE OF CLAIM

16.     Plaintiff Pearson timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying plaintiffs' claims against Defendant CITY OF NEW YORK.

17.     To date, Plaintiff Pearson has received no answer, and no compensation by Defendant CITY OF NEW YORK in response to his claim.

18.     Plaintiff Taj-Louis has not filed a Notice of Claim with the Comptroller of the City of New York. Case law is clear that a litigant need not file a notice of claim, when their claims are brought under 42 U.S.C. § 1983.

19.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

**A. July 28, 2015 Car Stop**

20.     On July 28, 2015, at approximately 7:00 p.m., Detective ARMENGOL DEIDA (hereinafter "Det. DEIDA") of the Narcotics Borough Queens, along with SERGEANT ADAN MUNOZ (hereinafter "Sgt. MUNOZ"), Detective MORRIS (hereinafter "Det. MORRIS"), and other members of the NYPD, were assigned to plainclothes "buy and bust" or narcotics enforcement, in the vicinity of 166th Street and 144th Avenue, in Queens, NY.

21.     In connection with their "buy and bust" enforcement duties, the defendant officers were tasked by the NYPD with the interdiction of any observed narcotic or marijuana crimes.

22.     Just before 7:20PM Plaintiff RODNEY PEARSON (hereinafter "PEARSON") had left his mother's day care center in his grey Audi vehicle driving two children home from the center when he saw his friend Taj Jean-Louis (hereinafter "TAJ") in the vicinity of 166th Street and 144th Avenue, in Queens, NY and offered to give him a ride.

23.     Plaintiffs PEARSON and TAJ were never engaged in any illegal activity  inside or outside of PEARSON's vehicle.

24.     Plaintiff's PEARSON And TAJ never exchanged money or drugs inside of PEARSON's vehicle.

25.      A short time after TAJ entered PEARSON's car Defendants DEIDA and MUNOZ stopped Pearson's car and removed both PEARSON and TAJ from the vehicle.

26.     Both PEARSON AND TAJ were stopped without reasonable suspicion and searched without probable cause.

27.     Sgt. MUNOZ searched TAJ and recovered a small amount of personal use marijuana from a plastic sandwich bag secreted in his waist area.

28.     TAJ had obtained the marihuana earlier in the day from an individual other than Plaintiff PEARSON.

29.     Det. DEIDA searched PEARSON and recovered approximately $54.

30.     Defendant MUNOZ and Plaintiff TAJ engaged in a heated discourse about the violation of TAJ's civil rights and a crowd from the neighboring community started to form around the defendant police officers include MUNOZ, DEIDA.

31. Upon information and belief, Defendant Det. MORRIS was one of the other officers that showed up when the crowd began to form.

32. Defendant MUNOZ looked visibly upset at TAJ's disrespect towards him.

33. Numerous civilian witnesses in the crowd were accusing the officers in sum and substance of violating Plaintiff PEARSON and TAJ's civil rights.

34. Upon information and belief, due to the animus between Defendant MUNOZ and Defendant TAJ and the crowd that was beginning to form Defendant MUNOZ needed to find a way to justify the illegal stop, search and seizure of the Plaintiffs.

35. Det. DEIDA who had been dealing with PEARSON as Sgt. MUNOZ was dealing with TAJ told PEARSON in sum and substance that PEARSON had nothing to worry about if it was just a small amount of marihuana and that his friend TAJ would get a ticket and they both would be let go.

36. Det. DEIDA then spoke to Sgt. MUNOZ outside of the hearing distance of the Plaintiffs and then both PEARSON AND TAJ were arrested and processed contrary to what defendant DEIDA had told PEARSON earlier.

37. Defendant Officers MUNOZ, DEIDA, MORRIS AND/OR JOHN DOE #1-5 took the facts they had and accused Plaintiff PEARSON of selling marihuana to Plaintiff TAJ all to justify their illegal stop and subsequent "A" Misdemeanor arrest of both individuals.

38. TAJ insisted he had gotten the marihuana from someone else earlier in the day but both Plaintiffs were arrested.

39. No drug contraband or stash were ever recovered from PEARSON's person or car

40.     However, PEARSON's vehicle was seized and vouchered, under the theory that it was used as an instrumentality of a marijuana sale to Taj Louis.

41.     Defendants DEIDA, MUNOZ, MORISS and AND/OR JOHN DOE #1-5   seized PEARSON's vehicle despite the fact that it had never been used in a drug sale.

42.     Defendants DEIDA, MUNOZ, MORRIS and AND/OR JOHN DOE #1-5 knew that if they seized PEARSON's vehicle it would result in a fine and or other costs that would be punitive to PEARSON.

43.     Per directives of then Police Commissioner Raymond Kelly, defendant TAJ should have been given a desk appearance ticket, rather than have been sent to central booking because he had possessed a small amount of marihuana which was not in plain view.

44.     In fact, officers had the discretion to give Plaintiffs PEARSON AND TAJ Desk Appearance Tickets (DAT), however both Plaintiffs were arrested and processed to punish both of them for not being quiet and obedient during the violation of their civil rights.

45.     As if the illegal arrest, abandoning of the less onerous DAT processing, and wrongful seizure of their vehicle wasn't enough, officers wanted to teach PEARSON and TAJ a lesson by giving them a "rough ride"[3] on the way back to the precinct.

46.     PEARSON and TAJ were placed into a police transport vehicle resembling an ice cream truck and although handcuffed they were not secured to the hooks on the walls of the vehicle or strapped to the seats they were sitting on

---

[3] A "rough ride" is a form of police brutality in which a handcuffed prisoner is placed in a police van without a seatbelt, and is thrown violently about by driving the vehicle erratically.

47.     When the transport vehicle weaved through traffic, PEARSON and TAJ struggled to remain on their seats. These were the same actions that led to the death of *Freddie Gray* in Baltimore. PEARSON and TAJ were injured but not permanently.

48.     PEARSON and TAJ were both held overnight and were released the next day when they saw the judge.

49.     Plaintiff TAJ was offered and accepted an Adjournment in Contemplation of Dismissal.

50.     Plaintiff TAJ never admitted his guilt and took the offer pursuant to advice from his legal counsel to resolve the case that same day.

51.     Plaintiff PEARSON was similarly offered a non-jail disposition but he refused the Queens Assistant District Attorney's offer because he wanted to prove his innocence and expose the Defendant Officer's wrongful actions.

**B.  Filing of a False Criminal Court Complaint**

52.     Upon information and belief, Defendant Officers DEIDA, MUNOZ, MORRIS and JOHN DOE #1-5 knew they had to file false paperwork to justify their illegal detention, and  search and seizure of Plaintiffs PEARSON and TAJ so they conspired to fabricate facts in a criminal court complaint against both Plaintiffs.

53.     In the criminal court complaint for both Plaintiff PEARSON AND TAJ, defendant officers created a factual scenario to justify the stop of Plaintiff's PEARSON's vehicle and the eventual recovery of marihuana from Plaintiff TAJ.  **See Exhibit A: Criminal Court Complaint Rodney Pearson (hereinafter "CCC Pearson"). See Exhibit B: Criminal Court Complaint Taj Jean Louis (hereinafter "CCC Taj").**

54. Not surprisingly, the narrative of the defendant officers' actions as relayed in the criminal court complaints for both PEARSON AND TAJ comported with the 4th Amendment. **See Exhibit A: CCC PEARSON. See Exhibit B: CCC TAJ.**

55. Upon information and belief although Detective DEIDA, the designated arresting officer, was the only signor of the complaints MUNOZ, MORRIS and JOHN DOE #1-5 were complicit in its production. **See Exhibit A: CCC PEARSON. See Exhibit B: CCC TAJ.**

56. In the criminal court complaint Defendants DEIDA, MUNOZ, MORRIS and JOHN DOE #1-5 wanted to give the impression that Plaintiff PEARSON's faulty car brake light is what drew the officers attention to Plaintiff PEARSON's car. **See Exhibit A: CCC PEARSON. See Exhibit B: CCC TAJ.**

57. According to the Criminal Court complaints for PEARSON AND TAJ after the officers saw the faulty brake light they conveniently saw Plaintiff TAJ enter PEARSON's car and then even more incredulously they just happened to see a hand to hand transaction of CASH for a plastic bag. **See Exhibit A: CCC PEARSON. See Exhibit B: CCC TAJ.**

58. The reality is that PEARSON and TAJ were stopped for one reason, they were two African American young men driving around in a nice car looking like they might be up to no good, but those hunches are not enough to accost and stop someone.

## C. March 11, 2016 Mapp/Dunaway Hearing: Suppression Granted, Det. DEIDA was found NOT CREDIBLE

59.     On March 11, 2016, in Part AP2, a <u>Mapp/Dunaway</u> hearing was held before Judicial Hearing Officer (JHO) John P. Walsh, to determine the legality of the officers' actions on July 28, 2015 with regards to Plaintiff PEARSON.[4]

60.     In that hearing, Det. DEIDA testified for the Prosecution and Plaintiff TAJ testified on behalf of PEARSON.  The Court heard two very different versions of what happened on July 28, 2015. **See Exhibit C**:  **July 28, 2015 Transcript of Mapp/Dunaway Hearing**

61.     Essentially, the Plaintiffs maintained they had not done anything illegal and the defendants told a version of events that actually materially differed from that of the Criminal Court Complaint for Plaintiffs PEARSON AND TAJ.

62.     Following the hearing, the JHO determined that Det. DEIDA's testimony *WAS NOT CREDIBLE.*  **See Exhibit D: March 29, 2016 Recommendation of Judicial Hearing Officer (hereinafter "JHO Decision") (¶ 3, p 4).**

63.      The court noted that Det. DEIDA's testimony at the hearing materially contradicted the criminal court complaint that the officer had signed. Specifically, in the complaint, Det. DEIDA stated that he had observed the broken tail light before the observation of the alleged sale, while at the hearing, Det. DEIDA maintained that he had only observed the broken tail light after the observation of the alleged sale. **See Exhibit D: JHO Decision (¶ 6, p 3)**

---

[4] Plaintiff TAJ was offered and accepted an Adjournment in Contemplation of Dismissal.

64.     Importantly, too, the court found incredible that Det. DEIDA could have actually observed any transaction, given the brief time frame, the moving vehicles, and the distances between Det. DEIDA and PEARSON's vehicle. **See Exhibit D: JHO Decision (¶ 6, p3 - ¶1, p4)**

65.     The court also labeled Det. DEIDA's testimony as "inherently contradictory." Namely, after he was confronted with photographic evidence that the side and rear windows of PEARSON's vehicle were tinted, Det. DEIDA, who had earlier testified seeing the alleged transaction while "passing" PEARSON's vehicle, now conveniently stated that he observed the alleged transaction through the front window -- which was not tinted **See Exhibit D: JHO Decision (¶1, p4).**

66.     The court concluded that the testimony of TAJ was more consistent with the facts, and that the testimony of Det. DEIDA to be incredible as a matter of law. **See Exhibit D: (¶2- ¶3, p4): JHO Decision.**

67.     On May 25, 2016, the Honorable Michelle A. Armstrong confirmed the JHO's findings of fact and conclusions of law, and concluded that the July 28, 2015 police seizure was not based upon probable cause.  **See Exhibit E: May 25, 2016 Decision of Michelle Armstrong, Criminal Court.**

68.     On May 25, 2016, after approximately 10 months of being prosecuted by the Defendant Officers and the Queens District Attorney's Office Plaintiff Pearson's case was dismissed.

69.     Plaintiff Pearson had to show up to court on at least 5 different occasions missing work each time.

## D. The CITY OF NEW YORK through the NYPD Knew that Defendant Officers Had a History of Civil Rights Violations

70.     The NYPD and the City of New York could have prevented the false arrest and malicious prosecution of Plaintiffs PEARSON AND TAJ because they had reason to know from

numerous open federal §1983 Civil Rights complaints that both Det. DEIDA and Sgt. MUNOZ had a track record of lying and violating numerous individuals' civil rights.

71.     In *Watson v City of New York et. a*l., 1:13-cv-05847, filed in the EDNY on October 24, 2013, it is alleged that Det. DEIDA along with other officers lied and falsely attributed a gun that was on the ground to Plaintiff Watson---charges that were ultimately dropped.  The city settled the matter for $45,000.

72.     Sgt. MUNOZ has **SIX** Federal §1983 Civil Rights Violation Cases filed against him:

a.      In *Bell et. al. v City of New York et. al*., 1:14-cv-04585, filed in the EDNY on August 5, 2014, the plaintiffs alleged that they were falsely arrested by Sgt. Munoz and others.

b.      In *Cayemittes v City of New York et. al.*, 1:15-cv-02364, filed in the EDNY on March 4, 2016, plaintiff *Cayemittes* alleged that Sgt. MUNOZ and others lied and claimed that the plaintiff was in possession of drugs—criminal charges were later dismissed.

c.      In *Dunn vs City of New York et. al*., 1:14-cv-05911, filed in the EDNY on April 15, 2015, Plaintiff Dunn alleged that Sgt. MUNOZ and other officers illegally searched the 71-year-old plaintiff's home and falsely imprisoned plaintiff--—criminal charges were later dismissed

d.      *Giles et. al. vs City of New York et. al., 1:15-cv-00893*, filed in the EDNY on March 17, 2015, where it is alleged Sgt. Munoz and other's illegally searched Plaintiffs' home without a warrant and arrested Plaintiffs without probable cause and attributed

contraband that didn't belong to Plaintiffs' in their possession---criminal charges that were ultimately dismissed.

e.      *Rodriguez vs City of New York et. al.*, 1:15-cv-00793 filed in the EDNY October 6, 2015, plaintiff Rodriguez alleged that he was falsely arrested by Sgt. Munoz and others---criminal charges that were ultimately dismissed.

f.      *Whitney vs City of New York et. al.*, 1:15-cv-05176 filed in the EDNY on 02/19/16, where it is alleged Sgt. Munoz and others illegal entered and searched Plaintiff's apartment and lied with regards to a criminal court complaint attributing drugs to the Plaintiff---criminal charges that were ultimately dismissed.

### DAMAGES

73.     As a result of Defendants actions Plaintiff PEARSON had to spend thousands of dollars to retain private counsel to fight a criminal court case against him.

74.     Plaintiff PEARSON had to risk the possibility of going to jail and have a hearing in this matter to get to the truth of the matter.

75.     Plaintiff PEARSON has also had to take off work on at least 5 different occasions to attend multiple court appearances to resolve this action.

76.     Plaintiff TAJ had to take off from work to assist PEARSON in his defense

77.     Both Plaintiffs have suffered mental anguish and emotional distress as a result of Defendants wanton, reckless disregard for their rights.

### FIRST CLAIM: GENERAL ALLEGATIONS
FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C § 1983
By All Plaintiffs Against All Defendants

78.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79.    By the actions described above, the defendant Police Officers arrested Plaintiffs PEARSON and TAJ without having probable cause to arrest Plaintiffs for any offense. The conduct of defendants CITY OF NEW YORK, DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, AND JOHN DOE # 1-5, as described herein, amounted to false arrest, excessive use of force, malicious abuse of process, failure to intervene, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, racial profiling, abuse of authority, unlawful taking of private property, discrimination, selective enforcement, fabrication of evidence, denial of equal protection of the laws, denial of due process rights and malicious prosecution. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

80.    Consequently, Plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

### SECOND CLAIM FOR RELIEF: FALSE ARREST
42 U.S.C. § 1983 and Fourth and Fourteenth Amendments
By All Plaintiffs Against All Defendants (Except City of New York)

81.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82.     By their conduct, as described herein, and acting under color of state law to deprive the Plaintiffs PEARSON AND TAJ of their rights to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, Defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, AND JOHN DOE # 1-5, are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

83.     As a direct and proximate result of aforesaid Defendants' unlawful actions, Plaintiffs have suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### THIRD  CLAIM  FOR RELIEF: MALICIOUS PROSECUTION
42 U.S.C. § 1983 and Fourth and Fourteenth Amendments
By All Plaintiffs Against Defendants (Except City of New York)

84.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85.     By their conduct, as described herein, and acting under color of state law, Defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, AND JOHN DOE # 1-5, are liable to Plaintiffs PEARSON AND TAJ under 42 U.S.C. § 1983 for the violation, of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

86.     Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs PEARSON and TAJ of their constitutional rights. The prosecution

by Defendants of Plaintiffs constituted malicious prosecution in that there was no basis for the Plaintiffs' arrest, yet Defendants continued with the prosecutions, which were resolved in Plaintiffs' favor.

87.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### FOURTH CLAIM: EXCESSIVE FORCE
42 U.S.C. § 1983 and Fourth, Fifth and Fourteenth Amendments
By All Plaintiffs Against Defendants (except City of New York)

88.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

89.     The acts of the individual defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, AND JOHN DOE # 1-5, under color of state law, in arresting Plaintiffs PEARSON AND TAJ, and in physically assaulting Plaintiffs with the "rough ride" were racially motivated, undertaken without lawful justification, and showed excessive force. Defendants showed a deliberate indifference to Plaintiffs' rights, and were designed to, and did, cause bodily harm, pain and suffering to the Plaintiffs in violation of their Constitutional rights as guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Through these actions, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United  States Constitution.

90.     As a direct and proximate result of the Defendants' unlawful actions, Plaintiffs have

suffered, and will continue to suffer, damages including, physical, mental and emotional injury and

pain, mental anguish, suffering, humiliation and embarrassment.

## FIFTH CLAIM: FAILURE TO TRAIN
42 U.S.C § 1983
By All Plaintiffs Against CITY OF NEW YORK

91.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs

as if fully set forth herein.

92.     The NYPD's training program was not adequate to train the defendant officers to

properly handle usual and recurring situations,

93.     The NYPD and the City of New York were deliberately indifferent to the need to train

its officers adequately.

94.     The failure to provide proper training was the cause of the Plaintiffs' deprivation of

their due process rights.

95.     In the deprivation of their freedom through their wrongful arrest Plaintiffs PEARSON

AND TAJ were harmed in this malicious prosecution and false arrest and the NYPD's failure to

adequately train its officers' was a substantial factor in causing the harm.

## SIXTH CLAIM: MUNICIPAL LIABILITY
### 42 U.S.C § 1983
By All Plaintiffs Against CITY OF NEW YORK

96.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.     Defendant CITY OF NEW YORK, acting through the NYPD, had actual and/or defacto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, lawful search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, and obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

98.     Specifically, the CITY OF NEW YORK, acting through the NYPD, knew or should have known that defendant DET. DEIDA, with one § 1983 civil rights case filed against him, and particularly SGT. MUNOZ with six §1983 civil rights cases filed against him, these particular defendant officers were in need of further training.

99.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

a.     Schoolcraft v. City of New York, 10-CV-6005 (RWS) (S.D.N.Y) (police officer who exposed a precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing these practices and customs);

b.      <u>Taylor-Mickens v. City of New York</u>, 09-CV-7923 (RWS)(S.D.N.Y)(police officers at 24th precinct issued four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint review Board against the precinct);

c.      <u>People v. Pagan</u>, 6416-2008 (Sup. Ct. N.Y. Co.) (officer swears out a false complaint and is convicted of falsifying police records);

d.      <u>Lin v. City of New York</u>, 10-CV-1936 (PGG) (S.D.N.Y) (officers arrest a person lawfully photographing an arrest of a bicyclist in Times Square and swear out criminal complaints  that  is contradicted by video evidence);

e.      <u>Colon v. City of New York</u>, 9-CV-0008 (JBW)(E.D.N.Y) (in  an Order  dated November 29, 2009 denying the City's motion to dismiss, wherein the police officers at issue were prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote: 'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some  evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

f.      <u>People v. Arbeedy</u>, 6314-2008 (Sup. Ct. Kings Co.) (NYPD narcotics detective found guilty planting drugs on two innocent civilians; former undercover NYPD narcotics

officer, Steve Anderson, testified that fellow narcotics officers routinely maintained a stash of narcotics to plant on innocent civilians in order to help those officers meet arrest quotas; Mr. Anderson testified concerning the NYPD's practice of "attaching bodies" to the narcotics to make baseless arrests stating: "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach bodies to it, they're going to be out of jail tomorrow anyway, and nothing is going to happen to them anyway. That kind of came to me and I accepted it –being around so long, and being an undercover";

g.      Bryant v. City of New York, 22011/2007 (Sup. Ct.  Kings Co.) (Jury declares that NYPD officers acted pursuant to a City policy regarding the number of arrests officers were expected to make that violated plaintiff's constitutional rights and contributed to her arrest);

h.      Williams v. City of New York, 06-CV-6601 (NGG) (E.D.N.Y.) (officers arrest plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on premises);

i.      MacNamara v. City of New York, 04-CV-9216 (RJS)(JCF)(S.D.N.Y) (evidence of perjured sworn statements systematically provided by officers to attempt to cover up or justify unlawful mass arrests of approximately 800  people  has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

j.      McMillan v. City of New York, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion);

k.    Nonneman v. City of New York, 04-CV-10131 (JSR)(AJP) (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youths);

l.    Richardson v. City of New York, 02-CV-3651 (JG)(CLP) (E.D.N.Y.) (officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

m.    White-Ruiz v. City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y.) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

n.    Exclusive: Muslim Woman Settles Racial Profiling Lawsuit with NYC but says Officials Refused to Meet with her to Discuss Police Abuse (Daily News, available at nydailynews.com/new-york/exclusive-woman-settles-racial-profiling-suit-nyc-article-1.2327196): After settling for over $37,000 after Mrs. Huq was arrested for Obstructing Pedestrian Traffic, police officials refused to change policy or meet to discuss additional training and supervision of officers;

o.    Two individuals were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzales and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped. When Gonzalez took out her camera to begin filming, they were arrested. DNA Info (May 21, 2013), http://www.dnainfo.com/new-

york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filiming-stop; and

      p.     On June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses for Disorderly conduct. DNA Info (June 20, 2013), http://www.dnainfo.com/new-york/201306t20/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick).

      100.    Defendant CITY OF NEW YORK maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant CITY OF NEW YORK acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

      101.    The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

      102.    By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

## SEVENTH CLAIM: DEPRIVATION OF RIGHTS
New York State Constitution Article I, §§§ 6, 11, & 12
By All Plaintiffs Against All Defendants (CITY OF NEW YORK)

103.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.    By reason of the foregoing, and by arresting and detaining plaintiffs PEARSON and TAJ without probable cause or reasonable suspicion, depriving the plaintiffs of due process and equal protection of laws, defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5, deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article 1, § 6 (providing for due process), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws), and Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

105.    In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights secured by Article I, §§§ 6, 11, and 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

106.    Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly,

and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§§ 6, 11 and 12 of the New York Constitution.

107.    Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Plaintiffs' state constitutional rights.

108.    Consequently, Plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## EIGHTH CLAIM: MALICIOUS PROSECUTION
### COMMON LAW CLAIM
By All Plaintiffs Against All Defendants (Except CITY OF NEW YORK)

109.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    The defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5, commenced and/or continued a criminal proceeding against the plaintiffs PEARSON AND TAJ; that was terminated in Plaintiffs favor. The defendant officers did not have probable cause and exhibited malice in pursuing these false charges.

111.    Consequently, Plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## NINTH CLAIM: FALSE IMPRISONMENT
COMMON LAW CLAIM
By All Plaintiffs Against All Defendants (Except CITY OF NEW YORK)

112.      Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.      In arresting both Plaintiffs PEARSON AND TAJ the defendants DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5, intended to confine the plaintiffs. The Plaintiffs were conscious of their overnight confinement and did not consent to it and the confinement was not privileged.

114.      Consequently, Plaintiffs have been damaged and hereby demands compensatory and punitive damages  in  an amount to be proven at  trial against each of the defendants, individually and severally.

## TENTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
COMMON LAW CLAIM
By All Plaintiffs Against All Defendants (Except CITY OF NEW YORK)

115.      Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116.      Defendant officers DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5, conduct, in assaulting and battering Plaintiffs, through the aforementioned acts, including the "rough ride" of the Plaintiffs, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of  decency.

117.      Defendants intended to and did cause severe emotional distress to Plaintiffs.

118.     The conduct of the aforesaid defendants were the direct and proximate cause of injury and damage to Plaintiffs PEARSON and TAJ and violated Plaintiffs' statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

119.     As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### ELEVENTH CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
COMMON LAW CLAIM
All Plaintiffs against All Defendants (Except CITY OF NEW YORK)

120.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.     Defendant officers DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5, conduct, in assaulting and battering Plaintiffs, through the aforementioned acts including the "rough ride" of the Plaintiffs, were careless and negligent as to the emotional health of Plaintiffs, and caused severe emotional distress to Plaintiffs.

122.     The acts and conduct of the aforesaid defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated Plaintiffs statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

123.     As a result of the foregoing, Plaintiff was deprived of their liberty, were subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

**TWELFTH CLAIM: NEGLIGENT SUPERVISION, RETENTION AND TRAINING**
COMMON LAW CLAIM
All Plaintiffs against All Defendants (Except CITY OF NEW YORK)

124.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.     Defendant CITY OF NEW YORK negligently trained, retained, and supervised Defendant officers DETECTIVE ARMENGOL DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, JOHN DOE # 1-5. The acts and conduct of said Defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.     Specifically, the CITY OF NEW YORK, acting through the NYPD, knew that defendant DET. DEIDA, with one § 1983 civil rights case filed against him, and particularly SGT. MUNOZ with six §1983 civil rights cases filed against him, knew that these officers were in need of further training.

127.     As a result of the foregoing, Plaintiffs were deprived of their liberty, were subjected to great physical and emotional pain and suffering, and was otherwise damaged and injured.

**THIRTEENTH CLAIM FOR RELIEF**
(Respondeat Superior)
By All Plaintiffs Against CITY OF NEW YORK

128.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

129.     The conduct of defendant officers DET. ARMENGOL, DET. DEIDA, SERGEANT ADAN MUNOZ, DETECTIVE MORRIS, AND JOHN DOE # 1-5, occurred while they were on

duty, in and during the course and scope of their duties and functions as New York City Police Officers and while they were acting as agents and employees of the Defendant CITY OF NEW YORK.

130.    Defendant CITY OF NEW YORK is liable to Plaintiffs under the common law doctrine of respondeat superior.

**WHEREFORE**, Plaintiffs PEARSON and TAJ demands judgment against the defendants individually and jointly and prays for relief as follows:

(a)    That Plaintiffs be compensated for the violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

(b)    That Plaintiffs be awarded punitive damages against the defendants; and

(c)    Award attorneys' fees pursuant to 42 U.S.C. § 1988;

(d)    Award costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988

(e)    For such other further and different relief as to the Court may deem just and proper.

DATED:        August 20, 2016
              New York, New York

                                        ___/s/_____
                                        Abraham M. George
                                        Law Offices of Abe George, P.C.
                                        44 Wall Street, 2nd Floor
                                        New York, NY 10005
                                        (P) 212-498-9803
                                        (F) 646-558-7533
                                        E-mail: abe@abegeorge.lawyer
                                        Attorney for Plaintiffs